# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 21, 2018          Decided April 5, 2019

No. 17-5149

STUART A. MCKEEVER,
APPELLANT

v.

WILLIAM P. BARR, ATTORNEY GENERAL,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-mc-00054)

*Graham E. Phillips*, appointed by the court, argued the cause for appellant as *amicus curiae* in support of appellant. With him on the court were *Roman Martinez* and *Nathanael D.S.R. Porembka*, appointed by the court.

*Stuart A. McKeever*, *pro se*, was on the brief for appellant.

*Amir C. Tayrani* was on the brief for *amicus curiae* Legal Scholars in support of appellant.

*Brad Hinshelwood*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Jessie K. Liu*, U.S. Attorney, and *Michael S. Raab* and *Mark R.*

2

*Freeman*, Attorneys.  *Elizabeth J. Shapiro*, Attorney, entered an appearance.

Before: SRINIVASAN and KATSAS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

Dissenting opinion filed by *Circuit Judge* SRINIVASAN.

GINSBURG, *Senior Circuit Judge:*  Historian Stuart A. McKeever appeals an order of the district court denying his petition to release grand jury records from the 1957 indictment of a former agent of the Federal Bureau of Investigation, which McKeever sought in the course of his research for a book he is writing.  The district court, lacking positive authority, asserted it has inherent authority to disclose historically significant grand jury matters but denied McKeever's request as overbroad.  On appeal, the Government argues the district court does not have the inherent authority it claims but rather is limited to the exceptions to grand jury secrecy listed in Federal Rule of Criminal Procedure 6(e).

We agree with the Government.  Accordingly, we affirm the order of the district court denying McKeever's petition for the release of grand jury matters.

## I.  Background

In 1956 Columbia University Professor Jesús de Galíndez Suárez disappeared from New York City.  News media at the time believed Galíndez, a critic of the regime of Dominican Republic dictator Rafael Trujillo, was kidnapped and flown to

the Dominican Republic and there murdered by Trujillo's agents. *Witness Tells of Galindez Pilot's Death*, N.Y. TIMES (Apr. 6, 1964); Dwight D. Eisenhower, The President's News Conference of April 25, 1956, in Public Papers of the Presidents of the United States 440–41 (1956). To this day, the details of Galíndez's disappearance remain a mystery.

Stuart McKeever has been researching and writing about the disappearance of Professor Galíndez since 1980. In 2013 McKeever petitioned the district court for the "release of grand jury records in the Frank case," referring to the 1957 investigation and indictment of John Joseph Frank, a former FBI agent and CIA lawyer who later worked for Trujillo, and who McKeever believed was behind Galíndez's disappearance. The grand jury indicted Frank for charges related to his failure to register as a foreign agent pursuant to the Foreign Agents Registration Act of 1938 but never indicted him for any involvement in Galíndez's murder. *See Frank v. United States*, 262 F.2d 695, 696 (D.C. Cir. 1958).

The district court asserted it has "inherent supervisory authority" to disclose grand jury matters that are historically significant, but nevertheless denied McKeever's request after applying the multifactor test set out *In re Craig*, 131 F.3d 99, 106 (2d Cir. 1997). Although several of the nine non-exhaustive factors favored disclosure, the district court read McKeever's petition as seeking release of all the grand jury "testimony and records in the Frank case," which it held was overbroad. McKeever duly appealed.[1]

---

[1] McKeever appeared pro se in the district court but on appeal has been ably assisted by a court-appointed amicus curiae.

We review de novo the district court's assertion of inherent authority to disclose what we assume are historically significant grand jury matters. *Cf. United States v. Doe*, 934 F.2d 353, 356 (D.C. Cir. 1991). Because we hold the district court has no such authority, we need not determine whether it abused its discretion in denying McKeever's petition as overbroad.[2]

## II. Analysis

The Supreme Court has long maintained that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979). That secrecy safeguards vital interests in (1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target of an investigation who might otherwise flee or interfere with the grand jury; and (3) preserving the rights of a suspect who might later be exonerated. *Id.* at 219. To protect these important interests,

> [b]oth the Congress and [the Supreme] Court have consistently stood ready to defend [grand jury secrecy] against unwarranted intrusion. In the absence of a clear indication in a statute or Rule, we must always be

---

[2] Although the records at issue here were transferred from the Department of Justice to the National Archives, we understand the DOJ has legal control over them. *See* FED. R. CRIM. P. 6(e)(1) ("Unless the court orders otherwise, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript prepared from those notes"). An order directing the Attorney General to release the records would, therefore, redress McKeever's alleged injury.

> reluctant to conclude that a breach of this secrecy has been authorized.

*United States v. Sells Engineering, Inc.*, 463 U.S. 418, 425 (1983).

As we have said before, Federal Rule of Criminal Procedure 6(e) "makes quite clear that disclosure of matters occurring before the grand jury is the exception and not the rule" and "sets forth in precise terms to whom, under what circumstances and on what conditions grand jury information may be disclosed." *Fund of Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 868 (D.C. Cir. 1981). The full text of Rule 6(e) is reproduced in the Appendix. Of particular relevance here, Rule 6(e)(2)(B) sets out the general rule of grand jury secrecy and provides a list of "persons" who "must not disclose a matter occurring before the grand jury" "[u]nless these rules provide otherwise." Rule 6(e)(3) then sets forth a detailed list of "exceptions" to grand jury secrecy, including in subparagraph (E) five circumstances in which a "court may authorize disclosure ... of a grand-jury matter." As McKeever does not claim his request comes within any exception, the question before us is whether the list of exceptions is exhaustive, as the Government argues.

We agree with the Government's understanding of the Rule. Rule 6(e)(2)(B) instructs that persons bound by grand jury secrecy must not make any disclosures about grand jury matters "[u]nless these rules provide otherwise." The only rule to "provide otherwise" is Rule 6(e)(3). Rules 6(e)(2) and (3) together explicitly require secrecy in all other circumstances. *See Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be

implied, in the absence of evidence of a contrary legislative intent").

That the list of enumerated exceptions is so specific bolsters our conclusion. For example, the first of the five discretionary exceptions in Rule 6(e)(3)(E) permits the court to authorize disclosure of a grand jury matter "preliminarily to or in connection with a judicial proceeding." Rule 6(e)(3)(E)(i). The second exception allows for disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Rule 6(e)(3)(E)(ii). The other three exceptions provide that a court may authorize disclosure to certain non-federal officials "at the request of the government" to aid in the enforcement of a criminal law, Rule 6(e)(3)(E)(iii)-(v); those provisions implicitly bar the court from releasing materials to aid in enforcement of civil law. Each of the exceptions can clearly be seen, therefore, as the product of a carefully considered policy judgment by the Supreme Court in its rulemaking capacity, and by the Congress, which in 1977 directly enacted Rule 6(e) in substantially its present form. *See Fund for Constitutional Gov't*, 656 F.2d at 867. In interpreting what is now Rule 6(e)(3)(E)(i), for example, the Supreme Court stressed that the exception "reflects a judgment that not every beneficial purpose, or even every valid governmental purpose, is an appropriate reason for breaching grand jury secrecy." *United States v. Baggot*, 463 U.S. 476, 480 (1983).

As the Government emphasizes, McKeever points to nothing in Rule 6(e)(3) that suggests a district court has authority to order disclosure of grand jury matter outside the enumerated exceptions. The list of exceptions in Rule 6(e)(3) does not lead with the term "including," nor does it have a residual exception. *Cf., e.g.*, FED. R. CIV. P. 60(b) (permitting the court to relieve a party from a final judgment or order for

five listed reasons as well as "any other reason that justifies relief").

The contrary reading proposed by McKeever – which would allow the district court to create such new exceptions as it thinks make good public policy – would render the detailed list of exceptions merely precatory and impermissibly enable the court to "circumvent" or "disregard" a Federal Rule of Criminal Procedure. *Carlisle v. United States*, 517 U.S. 416, 426 (1996); *see also Dietz v. Bouldin*, 136 S. Ct. 1885, 1888 (2016) (The exercise of an inherent power "cannot be contrary to any express grant of, or limitation on, the district court's power contained in a rule or statute").

In an effort to limit the natural consequences of his proposal, McKeever explains that the district court should be allowed to fashion new exceptions to grand jury secrecy only if they are "so different from the types of disclosures addressed by Rule 6(e)(3)(E) that no negative inference can be drawn." Amicus Reply Br. 14-16. That reasoning, however, ignores the likelihood that disclosures "so different" from the ones explicitly permitted by the rule are so far removed from permissible purposes of disclosure that the drafters saw no need even to mention them.

Our understanding that deviations from the detailed list of exceptions in Rule 6(e) are not permitted is fully in keeping with Supreme Court precedent. Though the Court has not squarely addressed the present question, its Rule 6 opinions cast grave doubt upon the proposition that the district court has authority to craft new exceptions. McKeever does not cite any case – and we can find none – in which the Supreme Court upheld a disclosure pursuant to the district court's inherent authority after Rule 6 was enacted. The Supreme Court once suggested in a dictum that Rule 6 "is but declaratory" of the

principle that disclosure of a grand jury matter is "committed to the discretion of the trial judge," *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959), but none of the cases it cited suggests a court has discretion to disclose grand jury materials apart from Rule 6. To the contrary, the Court said "any disclosure of grand jury [materials] is covered" by Rule 6(e). *Id.* at 398. The disclosure sought in that case – in order to cross-examine a witness in civil litigation – plainly fell within the exception for use "in connection with a judicial proceeding." *Id.* at 396 n.1 (quoting rule). The only "discretion" at issue involved the district court's determination whether the party seeking material covered by the exception had made a sufficiently strong showing of need to warrant disclosure. *See id.* at 398-99; *see also Douglas Oil*, 441 U.S. at 217-24 (describing same discretion). Indeed, the Court has at least four times since suggested the exceptions in Rule 6(e) are exclusive. In *Baggot*, 463 U.S. at 479-80, the Court prohibited disclosure of a witness's grand jury testimony for use in a civil investigation by the Internal Revenue Service. The Court held a civil tax audit was not "preliminary to [n]or in connection with a judicial proceeding" and therefore did not come within the exception in what is now Rule 6(e)(3)(E)(i). In reaching its conclusion, the Court explained that the exception at issue is "on its face, an affirmative limitation on the availability of court-ordered disclosure of grand jury materials." *Id.* at 479; *see also Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 567 (1983) (Rule 6(e)(3)(C) "authorize[s]" the court "to permit certain disclosures that are otherwise prohibited by the General Rule of Secrecy"); *United States v. Williams*, 504 U.S. 36, 46 n.6 (1992) (describing Rule 6(e), which "plac[es] strict controls on disclosure of 'matters occurring before the grand jury,'" as one of those "few, clear rules which were carefully drafted and approved by this Court and by the Congress to ensure the integrity of the grand jury's functions"); *Sells Engineering*, 463 U.S. at 425 ("In the

absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of this secrecy has been authorized").

Our understanding of Rule 6(e) is also supported by this court's precedents, which require a district court to hew strictly to the list of exceptions to grand jury secrecy. For example, *In re Sealed Case*, 801 F.2d 1379, 1381 (D.C. Cir. 1986), we said Rule 6(e)(2) "provides that disclosure of 'matters occurring before the grand jury' is prohibited unless specifically permitted by one of the exceptions set forth in Rule 6(e)(3)." A few years later, we reiterated this point *In re Sealed Case*, 250 F.3d 764, 768 (D.C. Cir. 2001), when we held that statements made by government attorneys to a qui tam court about a witness's grand jury testimony were an impermissible disclosure outside the strictures of Rule 6(e). In so holding, we rejected the Government's then-position that there is a place for implied exceptions to the Rule: "the Rule on its face prohibits such a communication because it does not except it from the general prohibition." *Id.* at 769. It would be most peculiar to have stressed then that the exceptions in Rule 6(e) "must be narrowly construed," *id.* 769, yet to hold now that they may be supplemented by unwritten additions.[3]

---

[3] McKeever and our dissenting colleague cite *Haldeman v. Sirica,* 501 F.2d 714 (D.C. Cir. 1974) – which permitted the disclosure of a sealed grand jury report to aid in the inquiry by the House Judiciary Committee into possible grounds for impeachment of President Nixon – as stepping outside the strict bounds of Rule 6(e). As the dissent acknowledges, however, our opinion in "*Haldeman* … contains no meaningful analysis of Rule 6(e)'s terms." Rather, the court's opinion is ambiguous as to its rationale, expressing only a "general agreement" with the district court's decision. *Id*. at 715. The reasoning of the district court is itself ambiguous; its holding that "[p]rinciples of grand jury secrecy do not bar this disclosure" is

based in part upon various policy considerations; in part upon the view that grand jury matters may lawfully be made available to the House of Representatives as "a body that in this setting acts simply as another grand jury"; and in part upon the view that it "seems incredible that grand jury matters should lawfully be available to disbarment committees and police disciplinary investigations and yet be unavailable to the House of Representatives in a proceeding of so great import as an impeachment investigation." *See In re Report & Recommendation of June 5, 1972 Grand Jury Concerning Transmission of Evidence to House of Representatives*, 370 F. Supp. 1219, 1228-30 (D.D.C. 1974); *id*. at 1228 n.39 (citing *Special Feb. 1971 Grand Jury v. Conlisk*, 490 F.2d 894, 897 (7th Cir. 1973) (police disciplinary investigation)), and *id*. at 1229 n.41 (citing *Doe v. Rosenberry*, 255 F.2d 118, 120 (2d Cir. 1958) (disbarment committee)), both decided per the "judicial proceeding" exception in Rule 6(e).

The dissent also notes that the district court in *Haldeman* favorably cited Judge Friendly's opinion *In re Biaggi*, 478 F.2d 489 (2d Cir. 1973), which authorized a disclosure not covered by any Rule 6(e) exception. But *Biaggi* was carefully limited to the "special circumstances" of that case, *id.* at 494, in which a grand jury witness, who is not subject to any secrecy obligation in the first place, sought disclosure only of his own testimony. *See id.* at 492-93. Judge Friendly carefully noted that, if the witness had not sought his own testimony, then disclosure would have been improper "[n]o matter how much, or how legitimately, the public may want to know" how the witness had testified. *Id.* at 493.

In any event, we read *Haldeman* as did Judge MacKinnon in his separate opinion concurring in part, as fitting within the Rule 6 exception for "judicial proceedings." *See* 501 F.2d at 717. Doing so reads the case to cohere, rather than conflict, with the Supreme Court and D.C. Circuit precedents discussed above, which both predate and postdate *Haldeman*.

McKeever makes three arguments to the contrary. The first is that Rule 6(e) imposes no obligation of secrecy upon the district court itself because the district court is not on the list of "persons" to whom grand jury secrecy applies per Rule 6(e)(2). *See* Rule 2(e)(2)(A) ("No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B)"). Therefore, the argument goes, the two *Sealed Cases* discussed above are inapplicable here because they deal with disclosures by government attorneys, not by the court itself, and the court has authority to order disclosure of grand jury matters because these materials are "judicial records" over which the court has inherent authority. Amicus Br. 24-25 (citing, inter alia, *Carlson v. United States*, 837 F.3d 753, 758-59 (7th Cir. 2016) (concluding grand jury records are "records of the court" over which the district court can exercise inherent authority because the grand jury is "part of the judicial process")).

We do not agree that the omission of the district court from the list of "persons" in Rule 6(e)(2) supports McKeever's claim. Rule 6 assumes the records are in the custody of the Government, not that of the court: When the court authorizes their disclosure, it does so by ordering "an attorney for the government" who holds the records to disclose the materials. *See* Rule 6(e)(1) ("Unless the court orders otherwise, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript" of the grand jury proceeding). Because an "attorney for the government" is one of the "persons" subject to grand jury secrecy in Rule 6(e)(2)(B), the Rule need not also list the district court as a "person" in order to make the court, as a practical matter, subject to the strictures of Rule 6. Indeed, as the Government explains, a district court is not ordinarily privy to grand jury matters unless called upon to respond to a request to disclose grand jury matter. As to whether records of a grand jury

proceeding are "judicial records" – a term not found in Rule 6 – we note the teaching of the Supreme Court that although the grand jury may act "under judicial auspices," its "institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length," *Williams*, 504 U.S. at 47; it is therefore not at all clear that when Rule 6(e)(2)(B) mentions a "matter appearing before the grand jury," it is referring to a "judicial record." The Supreme Court has never said as much, and we, albeit in another context, have twice said the opposite: "[T]he concept of a judicial record 'assumes a judicial decision,' and with no such decision, there is 'nothing judicial to record." *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013) (quoting *United States v. El-Sayegh*, 131 F.3d 158, 162 (D.C. Cir. 1997)).

McKeever's second argument, which was recently accepted by the Seventh Circuit in *Carlson*, is that the advent of Rule 6 did not eliminate the district court's preexisting authority at common law to disclose grand jury matters because courts "do not lightly assume" a federal rule reduces the "scope of a court's inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991) (citation omitted). A federal rule that "permits a court to do something and does not include any limiting language" therefore "should not give rise to a negative inference that it abrogates the district court's inherent power without a 'clear[] expression of [that] purpose.'" *Carlson*, 837 F.3d at 763 (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 631-32 (1962)) (alterations in original). In this telling, because Rule 6 did not contain a "clear expression" that it displaced the district court's preexisting authority, the court remains free to craft new exceptions; the rulemakers simply furnished the list of detailed exceptions "so that the court knows that no special hesitation is necessary in those circumstances." *Id.* at 764-65.

That account of Rule 6 is difficult to square with the text of the Rule, which we have examined above. The "limiting language," *id.* at 763, the Seventh Circuit sought is plain: Rule 6(e)(2) prohibits disclosure of a grand jury matter "unless these rules provide otherwise." Yet the Seventh Circuit dismisses this instruction because a limitation "buried" in Rule 6(e)(2) could not "secretly appl[y]" to "an entirely different subpart," *Carlson*, 837 F.3d at 764, never mind that this subpart follows immediately after Rule 6(e)(2) as Rule 6(e)(3). Because we believe it is necessary to read the exceptions in subpart (e)(3) in conjunction with the general rule in subpart (e)(2), we agree with Judge Sykes's dissent in *Carlson*:

> As my colleagues interpret the rule, the limiting language in the secrecy provision has no bearing at all on the exceptions.... But the two provisions cannot be read in isolation. They appear together in subpart (e), sequentially, and govern the same subject matter. The exceptions plainly modify the general rule of nondisclosure. Treating the exceptions as merely exemplary puts the two provisions at cross-purposes: If the district court has inherent authority to disclose grand-jury materials to persons and in circumstances not listed in subsection (e)(3)(E), the limiting phrase "unless these rules provide otherwise" in the secrecy provision is ineffectual.

*Id.* at 769.

McKeever's third contention is that the purposes of grand jury secrecy would not be served by denying disclosure in this case; the passage of time and likely death of all witnesses in Frank's grand jury proceeding have rendered continued secrecy pointless. Of course, these considerations are irrelevant if the district court lacks authority to create new

exceptions to Rule 6(e). In any event, it is not clear that continued secrecy serves no purpose in this case. First, privacy interests can persist even after a person's death. *See New York Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1009-1010 (D.C. Cir. 1990). Second, as the Supreme Court noted in *Douglas Oil*, there is likely to be a chilling effect on what a witness is willing to say to a grand jury if there is a risk the court will later make the witness's testimony public. 441 U.S. at 219. The effect of an exception must be evaluated *ex ante*, not *ex post*. For example, if a witness in Frank's grand jury proceedings had known that the public might learn about his testimony in the future – and that his words could be immortalized in a book – then his willingness to testify "fully and frankly," *id*., could have been affected. Furthermore, the risk of a witness's testimony being disclosed would grow as district courts continue over time to create additional exceptions to grand jury secrecy.

Our concern is not merely hypothetical; as the Government points out, there has been a steady stream of requests for disclosures since the district court first claimed inherent authority *In re Petition of Kutler*, 800 F. Supp. 2d 42, 50 (D.D.C. 2011) (granting request to disclose President Nixon's grand jury testimony about Watergate due to its historical importance). *See In re Application to Unseal Dockets Related to the Independent Counsel's 1998 Investigation of President Clinton*, 308 F. Supp. 3d 314, 335-36 (D.D.C. 2018) (ordering disclosure of grand jury materials related to the investigation of President Clinton's business dealings and his relationship with a White House intern); *Sennett v. Dep't of Justice*, 962 F. Supp. 2d 270, 283-84 (D.D.C. 2013) (permitting the FBI to withhold grand jury information in response to a Freedom of Information Act request despite the requester's argument for an exception to grand jury secrecy for historically important material); *In re*

*Nichter*, 949 F. Supp. 2d 205, 212-13 (D.D.C. 2013) (denying disclosure of certain grand jury records about Watergate in part because at least one of the subjects of the testimony was alive); *In re Shepard*, 800 F. Supp. 2d 37, 39-40 (D.D.C. 2011) (denying as overbroad a request for disclosure of "all testimony and materials associated with *every* witness before *three* [Watergate] grand juries").

We recognize that our view of Rule 6(e) differs from that of some other circuits. *See, e.g.*, *Carlson*, 837 F.3d at 767, discussed above; *In re Craig*, 131 F.3d at 105 (recognizing it is "entirely conceivable that in some situations historical or public interest alone could justify the release of grand jury information" because they constitute "special circumstances" in which release of grand jury records is appropriate outside the bounds of Rule 6); *In re Hastings*, 735 F.2d 1261, 1272 (11th Cir. 1984) (allowing a district court to "act outside the strict bounds of Rule 6(e), in reliance upon its historic supervisory power" to disclose grand jury matters to a judicial investigating committee); *Pitch v. United States*, 915 F.3d 704, 707 (11th Cir. 2019) (affirming an order to unseal historically significant grand jury matter "[b]ecause we are bound by our decision in *Hastings*"). For all the reasons set forth above, we simply cannot agree.

Instead, we agree with the Sixth Circuit, which has turned down an invitation to craft an exception to grand jury secrecy outside the terms of the Rule:

> We are not unaware of those commentators who have urged the courts to make grand jury materials more accessible to administrative agencies in an effort to reduce duplicative investigations. Rule 6(e)(3)(C)(i) is not a rule of convenience; without an unambiguous statement to the contrary from Congress, we cannot,

and must not, breach grand jury secrecy for any purpose other than those embodied by the Rule.

*In re Grand Jury 89-4-72*, 932 F.2d 481, 488 (1991) (citation omitted). The Eighth Circuit expressed the same view in *United States v. McDougal*, 559 F.3d 837, 840 (2009):

> McDougal's argument invoking ... the "[c]ourt's supervisory power over its own records and files" is unpersuasive.... "[B]ecause the grand jury is an institution separate from the courts, over whose functioning the courts do not preside," *United States v. Williams*, 504 U.S. 36, 47 (1992), courts will not order disclosure absent a recognized exception to Rule 6(e) ....

Just so.[4]

### III. Conclusion

Because the district court has no authority outside Rule 6(e) to disclose grand jury matter, the order of the district court denying McKeever's petition is

*Affirmed.*

---

[4] At least three other circuits have expressed the same view in dicta. *See United States v. Educ. Dev. Network Corp.*, 884 F.2d 737, 740 (3d Cir. 1989); *In re Grand Jury Subpoenas, Apr., 1978, at Baltimore*, 581 F.2d 1103, 1108–09 (4th Cir. 1978); *In re J. Ray McDermott & Co., Inc.,* 622 F.2d 166, 172 (5th Cir. 1980).

**Appendix**

*Federal Rule of Criminal Procedure 6: The Grand Jury*

**(e) Recording and Disclosing the Proceedings.**

**(1) Recording the Proceedings.** Except while the grand jury is deliberating or voting, all proceedings must be recorded by a court reporter or by a suitable recording device. But the validity of a prosecution is not affected by the unintentional failure to make a recording. Unless the court orders otherwise, an attorney for the government will retain control of the recording, the reporter's notes, and any transcript prepared from those notes.

**(2) Secrecy.**

**(A)** No obligation of secrecy may be imposed on any person except in accordance with Rule 6(e)(2)(B).

**(B)** Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury:

**(i)** a grand juror;

**(ii)** an interpreter;

**(iii)** a court reporter;

**(iv)** an operator of a recording device;

**(v)** a person who transcribes recorded testimony;

**(vi)** an attorney for the government; or

**(vii)** a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii).

**(3) Exceptions.**

**(A)** Disclosure of a grand-jury matter – other than the grand jury's deliberations or any grand juror's vote – may be made to:

      **(i)** an attorney for the government for use in performing that attorney's duty;

      **(ii)** any government personnel – including those of a state, state subdivision, Indian tribe, or foreign government – that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law; or

      **(iii)** a person authorized by 18 U.S.C. § 3322.

**(B)** A person to whom information is disclosed under Rule 6(e)(3)(A)(ii) may use that information only to assist an attorney for the government in performing that attorney's duty to enforce federal criminal law. An attorney for the government must promptly provide the court that impaneled the grand jury with the names of all persons to whom a disclosure has been made, and must certify that the attorney has advised those persons of their obligation of secrecy under this rule.

**(C)** An attorney for the government may disclose any grand-jury matter to another federal grand jury.

**(D)** An attorney for the government may disclose any grand-jury matter involving foreign intelligence, counterintelligence (as defined in 50 U.S.C. § 3003), or foreign intelligence information (as defined in Rule 6(e)(3)(D)(iii)) to any federal law enforcement, intelligence, protective, immigration, national defense, or national security official to assist the official receiving the information in the performance of that official's duties. An attorney for the

government may also disclose any grand-jury matter involving, within the United States or elsewhere, a threat of attack or other grave hostile acts of a foreign power or its agent, a threat of domestic or international sabotage or terrorism, or clandestine intelligence gathering activities by an intelligence service or network of a foreign power or by its agent, to any appropriate federal, state, state subdivision, Indian tribal, or foreign government official, for the purpose of preventing or responding to such threat or activities.

    **(i)** Any official who receives information under Rule 6(e)(3)(D) may use the information only as necessary in the conduct of that person's official duties subject to any limitations on the unauthorized disclosure of such information. Any state, state subdivision, Indian tribal, or foreign government official who receives information under Rule 6(e)(3)(D) may use the information only in a manner consistent with any guidelines issued by the Attorney General and the Director of National Intelligence.

    **(ii)** Within a reasonable time after disclosure is made under Rule 6(e)(3)(D), an attorney for the government must file, under seal, a notice with the court in the district where the grand jury convened stating that such information was disclosed and the departments, agencies, or entities to which the disclosure was made.

**(iii)** As used in Rule 6(e)(3)(D), the term "foreign intelligence information" means:

> **(a)** information, whether or not it concerns a United States person, that relates to the ability of the United States to protect against–
>
> > • actual or potential attack or other grave hostile acts of a foreign power or its agent;
> > • sabotage or international terrorism by a foreign power or its agent; or
> > • clandestine intelligence activities by an intelligence service or network of a foreign power or by its agent; or
>
> **(b)** information, whether or not it concerns a United States person, with respect to a foreign power or foreign territory that relates to–
>
> > • the national defense or the security of the United States; or
> > • the conduct of the foreign affairs of the United States.

**(E)** The court may authorize disclosure – at a time, in a manner, and subject to any other conditions that it directs – of a grand-jury matter:

> **(i)** preliminarily to or in connection with a judicial proceeding;
> **(ii)** at the request of a defendant who shows that a ground may exist to dismiss the

indictment because of a matter that occurred before the grand jury;

**(iii)** at the request of the government, when sought by a foreign court or prosecutor for use in an official criminal investigation;

**(iv)** at the request of the government if it shows that the matter may disclose a violation of State, Indian tribal, or foreign criminal law, as long as the disclosure is to an appropriate state, state-subdivision, Indian tribal, or foreign government official for the purpose of enforcing that law; or

**(v)** at the request of the government if it shows that the matter may disclose a violation of military criminal law under the Uniform Code of Military Justice, as long as the disclosure is to an appropriate military official for the purpose of enforcing that law.

**(F)** A petition to disclose a grand-jury matter under Rule 6(e)(3)(E)(i) must be filed in the district where the grand jury convened....

[Remainder of Rule 6 omitted.]

SRINIVASAN, *Circuit Judge*, dissenting: The central issue in this case is whether a district court can authorize the release of grand jury materials in circumstances beyond those expressly identified in Rule 6(e) of the Federal Rules of Criminal Procedure. If not, grand jury materials falling outside Rule 6(e)'s exceptions cannot be released even if there is a strong public interest favoring disclosure and no enduring interest in secrecy. My colleagues read Rule 6 to compel that result. In my respectful view, however, our court's en banc decision in *Haldeman v. Sirica*, 501 F.2d 714 (1974), allows for district court disclosures beyond Rule 6(e)'s exceptions.

Rule 6(e) "codifies the traditional rule of grand jury secrecy." *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 425 (1983). The Rule imposes an obligation of secrecy on certain persons, Rule 6(e)(2), but then sets out five exceptions to that obligation, Rule 6(e)(3)(A)–(E). The first four exceptions allow for disclosure without a need for district court authorization. The last exception describes five circumstances in which "[t]he *court may* authorize disclosure . . . of a grand-jury matter." Rule 6(e)(3)(E)(i)–(v) (emphasis added). None of those circumstances applies in this case.

The crucial question for our purposes, then, is whether Rule 6(e)(3)'s exceptions identify the only circumstances in which a district court may authorize disclosure of grand jury materials. Or, alternatively, does a court retain inherent discretion to consider releasing grand jury materials in other circumstances—potentially including, as relevant here, for reasons of historical significance?

In *Haldeman*, this court, sitting en banc, faced the contention that a district court's authority to disclose grand jury materials is confined to the exceptions in Rule 6(e). The district court in that case had ordered the disclosure of materials from the Watergate grand jury to the House Judiciary Committee for its consideration in investigating the possible

impeachment of President Nixon. Only one of the exceptions in Rule 6(e) even arguably applied: when disclosure occurs "preliminarily to or in connection with a judicial proceeding." *See* Rule 6(e)(3)(E)(i).

The petitioners in *Haldeman* asked our court to prohibit the district court from releasing the grand jury materials to the House Judiciary Committee. We declined to do so and instead sustained the district court's disclosure order. 501 F.2d at 716. Our decision thus settled that a district court retains discretion to release grand jury matter to a House Committee in the specific context of an impeachment inquiry.

But what are the implications of our decision in *Haldeman* for a district court's authority to release grand jury materials outside the impeachment context? And, in particular, does a district court possess inherent discretion to consider disclosure beyond the specific exceptions set out in Rule 6(e)—including, as relevant here, for reasons of historical significance?

The petitioners in *Haldeman* argued no. They believed the district court lacked discretion to disclose the grand jury materials to the House Judiciary Committee unless the circumstances fit within the Rule 6(e) exception for judicial proceedings. They "asserted, both in the District Court and here, that the discretion ordinarily reposed in a trial court to make such disclosure of grand jury proceedings as he deems in the public interest is, by the terms of Rule 6(e) . . . limited to circumstances incidental to judicial proceedings and that impeachment does not fall into that category." *Id.* at 715.

In rejecting the petitioners' argument, we said that the district judge, Chief Judge Sirica, "ha[d] dealt at length with this contention," that we were "in general agreement with his handling of the[] matter[]," and that "we fe[lt] no necessity to

expand his discussion." *Id.* Our decision thereby subscribed to Chief Judge Sirica's rationale for his disclosure order. The question for our purposes, then, is whether he ordered the disclosure on an understanding that he had inherent discretion to release grand jury materials outside the Rule 6(e) exceptions, or whether he instead believed he was confined to those exceptions but that the disclosure to the House Judiciary Committee fit within the exception for judicial proceedings.

I understand Chief Judge Sirica to have adopted—and thus our court to have ratified—the former understanding. He began his analysis by stating that, as to "the question of disclosure," "judicial authority" is "exclusive." *In re Report & Recommendation of June 5, 1972 Grand Jury*, 370 F. Supp. 1219, 1226 (D.D.C. 1974). He noted decisions that had assessed the propriety of disclosure by weighing, "among other criteria, judicial discretion over grand jury secrecy, the public interest, and prejudice to persons named by the [grand jury] report." *Id.* at 1227. Those considerations led him to conclude "that delivery to the Committee is eminently proper, and indeed, obligatory." *Id.*

Judge Sirica identified the "only significant objection to disclosure" to be "the contention that release . . . is absolutely prohibited by Rule 6(e)." *Id.* He emphasized, though, that the "rule continues the traditional practice of secrecy on the part of members of the grand jury, *except when the court permits a disclosure.*" *Id.* (emphasis in original). He reviewed decisions addressing the exception for judicial proceedings and concluded that the "difficulty in application of Rule 6(e) to specific fact situations likely arises from the fact that its language regarding 'judicial proceedings' can imply limitations on disclosure much more extensive than were apparently intended." *Id.* at 1229.

4

Of particular salience, Judge Sirica favorably referenced a then-recent "opinion written by Chief Judge Friendly" in which "the Second Circuit held that Rule 6(e) did not bar public disclosure of grand jury minutes[] *wholly apart from judicial proceedings*." *Id.* (emphasis added). The Second Circuit had found that the judicial-proceeding exception was "inapplicable" because the court had "not been told of any judicial proceeding preliminary to or in connection with which the . . . grand jury testimony may be relevant." *In re Biaggi*, 478 F.2d 489, 492 (2d Cir. 1973). But the court still allowed disclosure, even though no Rule 6(e) exception applied. *Id.* at 492–93; *see id.* at 493–94 (Hays, J., dissenting) (noting that the majority allowed disclosure even though it "concede[d] that the present situation does not present a case for the application of any of the exceptions specified in the Rule").

Judge Sirica, in concluding that "[p]rinciples of grand jury secrecy do not bar [the] disclosure" at issue in *Haldeman*, explained that he was "persuaded to follow the lead . . . of Judges Friendly and Jameson" in *Biaggi*. 370 F. Supp. at 1230. He also listed additional decisions he was "persuaded to follow" in which disclosure had been authorized. *Id.* Those decisions, like *Biaggi*, did not involve disclosures justified on the theory that they fell within any Rule 6(e) exception. I thus understand Judge Sirica to have ordered disclosure on the understanding that he retained inherent discretion to release grand jury materials outside of Rule 6(e)'s exceptions.

Granted, Judge Sirica at one point described the House Judiciary Committee as "a body that in this setting acts simply as another grand jury." *Id.* But, as his reliance on *Biaggi* and the other decisions shows, he did not compare the Committee to "another grand jury" on any theory that the Committee's investigation implicated the judicial-proceedings exception. In fact, the Advisory Committee later added an exception

allowing disclosures from one grand jury to another, reasoning that such a transfer fell outside the pre-existing judicial-proceedings exception. *See* Rule 6(e)(3)(C) advisory committee's note to 1983 amendment. Rather, Judge Sirica compared the Committee to "another grand jury" to convey that the Committee likewise would "insure against unnecessary and inappropriate disclosure." 370 F. Supp. at 1230.

For those reasons, when our court in *Haldeman* endorsed Judge Sirica's approach, we in my view affirmed his understanding that a district court retains discretion to release grand jury materials outside the Rule 6(e) exceptions. To be sure, *Haldeman*—unlike my colleagues' careful opinion in this case—contains no meaningful analysis of Rule 6(e)'s terms. But Rule 6(e) has not changed since *Haldeman* in any way material to the issue we address today. And my reading of *Haldeman* squares with the reading of the decision adopted by each of our sister circuits to have interpreted it. *See Pitch v. United States*, 915 F.3d 704, 710 n.5 (11th Cir. 2019); *Carlson v. United States*, 837 F.3d 753, 766 (7th Cir. 2016). It also squares with the Advisory Committee's evident reason for declining to add a Rule 6(e) exception for historically-significant materials—viz., that district courts already authorized such disclosures as a matter of their inherent authority. *See Pitch*, 915 F.3d at 715 (Jordan, J., concurring). It is also consistent with various decisions relied on by my colleagues, *see supra* at 7–9 & n.3, none of which dealt with whether courts can order disclosures outside of Rule 6(e)'s exceptions.

Because my colleagues conclude that district courts lack authority to release grand jury materials outside the Rule 6(e) exceptions, they have no occasion to decide whether, if district courts do have that authority, the district court in this case appropriately declined to exercise it. I therefore do not reach

that issue either.  But on the threshold question of whether district courts have discretion to consider disclosures beyond Rule 6(e), I respectfully dissent from my colleagues' view based on my different reading of our decision in *Haldeman*.